UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-CV-00186-MOC-DSC

| | |
|---|---|
| SPENCER SPIRIT HOLDINGS, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| SUNRISE ROOFING, INC., et al., | ) |
| Defendants, | ) |
| and | ) |
| S.A. ALSAN & ASSOCIATES, INC. D/B/A/ THE ALSAN GROUP, | ) **ORDER** |
| Third-Party Plaintiff, | ) |
| vs. | ) |
| STAG GI CHARLOTTE, LLC | ) |
| Third-Party Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant Sunrise Roofing's Motion to Exclude the Supplemental Opinions of Plaintiff Spencer Spirit Holdings' Expert Witness, Alan Campbell, pursuant to Federal Rules of Civil Procedure 26 and 37. See Doc. No. 67. For reasons explained below, Defendant's Motion is denied.

**I.    BACKGROUND**

This diversity action stems from the partial roof collapse of Plaintiff's distribution facility in Charlotte, North Carolina on September 1, 2016 during an intense rainstorm. See Doc. No. 31. Plaintiff filed suit in the United States District Court for the Western District of North Carolina, alleging the collapse resulted from Defendant's improper installation of the roof. Id. ¶ 17. Among

other acts and omissions, Plaintiff alleges that Defendant negligently installed the roof without a secondary drainage system for accumulated water, in violation of the North Carolina Plumbing Code. Id. ¶ 31. Plaintiff also asserts Defendant knew its primary drains were undersized, as goose droppings and feathers were clogging those drains. Id. ¶ 18.

On December 4, 2019, the Court entered a Pretrial Order and Case Management Plan. See Doc. No. 52. Relevant here, the Order instructed: "Plaintiff shall provide reports from its expert witnesses pursuant to Rule 26(a)(2) by February 21, 2020. Defendants shall provide reports from their expert witnesses by March 20, 2020." Id. ¶ I.H. In accordance with the Order, Plaintiff designated Alan Campbell as its expert witness to testify on the cause of the roof collapse. See Doc. No. 67-2. In his original report, disclosed on February 21, 2020, Mr. Campbell ultimately concluded that "the primary roof drains became clogged by saturated goose droppings and feathers" and "[t]he absence of a secondary (emergency) drainage system as required by the applicable building code [was] the fatal flaw that caused [the] roof collapse." Id. at 22.

Mr. Campbell relied on a host of evidence and analyses to reach that conclusion. First, he conducted a structural analysis of the roof system, including a bar joist that was removed from the collapse. Id. When analyzing the joist, Mr. Campbell was unable to locate an identifying tag, so he assumed the joist designation "to be either 24K5 or 24K6 based on the width of the top and bottom chords" for purposes of his analysis. Id. Mr. Campbell also reviewed meteorological data and the roof's parapet opening, opining that "the depth of water attempting to drain through the [parapet] opening could have been as much as approximately 10 inches, 6 feet away from the opening and 12–14 inches above the surface of the roof (the opening in the parapet is approximately 4 inches above the surface of the roof) meaning that 4 [inches] of water would collect on the roof prior to the opening even beginning to drain." Id. at 17, 22.

With Plaintiff's consent, Defendant asked for and obtained two extensions prior to submitting its own expert report. See Doc. Nos. 58, 60. Defendant then disclosed its expert report on April 7, 2020, which was prepared by Louis Hackney. See Doc. No. 67-3. Relevant here, Mr. Hackney conducted his own structural analysis, noting the joists were not 24K5 or 24K6 but were actually designated 24H6. Id. at 2. Evaluating "load carrying capacity," Mr. Hackney concluded, "[i]n an unsaturated condition, assuming a design live load of 20 [pounds per square foot], . . . [i]t would require an additional 3.8 inches of ponding water to exceed the remaining capacity of the bar joists (or a total ponding water depth of 7.6 [inches])." Id. at 8–9. As to the parapet opening, he thought it "acted as an emergency overflow." Id. at 2. Specifically, he opined: "[a]ssuming the primary drains were obstructed and non-functional, the maximum depth of water that could accumulate on the roof before spilling over the parapet opening at the north end of the warehouse was approximately 4⅝ [inches]. . . [which] did not exceed the ultimate joist capacity." Id. at 10.

Thereafter, on May 5, 2020, Mr. Campbell provided a "supplemental report to address the new findings and opinions provided" by Mr. Hackney. Doc. No. 67-4 at 1. According to him, Mr. Hackney had "utilized a portable manlift to survey the original existing bar joists" and thereby discovered that the joists were designated 24H6. Id. at 4. While the "depth and geometry of the 24K5, 24K6, and 24H6 bar joists is similar[,] the 24H6 bar joists have a lesser load carrying capability." Id. Mr. Campbell thus revised his structural analysis to account for that difference. See id. at 5. Regarding load carrying capacity, Mr. Campbell made clear that he agreed with Mr. Hackney's prior conclusion "that approximately 4 inches of additional water on the roof would cause the bar joists to collapse." Id. at 3. But Mr. Campbell took issue with Mr. Hackney's conclusion that the parapet opening provided an "adequate emergency overflow drain." Id. at 2. To support his prior report and rebut Mr. Hackney's opinions, he attached charts showing that,

3

with heavy rainfall, "the total depth of water could have been as much as 14 inches." Id. at 3–4.

Defendant deposed Mr. Campbell regarding his original and supplemental report on June 17, 2020. See Doc. No. 69-2. But two days before, Defendant filed the instant motion, seeking to exclude the supplemental report for failing "to comply with Rule 26 and the Case Management Plan regarding the deadline for expert disclosures." Doc. No. 67. Plaintiff responded in opposition, Doc. No. 69, to which Defendant filed a reply in support of its motion, Doc. No. 71. The Motion to Exclude the supplemental report is now ripe for review.

**II.     ANALYSIS**

Under Federal Rule of Civil Procedure 26(a)(2), a witness who is "retained or specially employed to provide expert testimony" must produce and disclose a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." After disclosing an expert report, Rule 26(e)(1) requires a party to "supplement or correct its disclosure . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Rule 26(e)(2) imposes a deadline, explaining that "[a]ny additions or changes . . . must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Finally, where a party fails to make necessary disclosures under Rules 26(a) and 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Importantly, Rule 26(e) "does not grant a license to supplement a previously filed expert report because a party wants to." Coles v. Perry, 217 F.R.D. 1, 3 (D.D.C. 2003). Rather, it "imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect." Id. Put simply, Rule 26(e) is not a vehicle for experts to

4

Case 3:19-cv-00186-MOC-DSC   Document 75   Filed 08/17/20   Page 4 of 9

"continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, [and then] continually supplement their opinions." In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., 263 F. Supp. 3d 446, 451 (S.D.N.Y. 2017) (quoting Sandata Techs., Inc. v. Infocrossing, Inc., No. 05-CV-9546, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007)). Nor is it a "vehicle to permit a party to serve a deficient opening report and then remedy that deficiency through the expedient of a 'supplemental' report." Id. (quoting Lidle v. Cirrus Design Corp., No. 08-CV-1253, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009)); see EEOC v. Freeman, 778 F.3d 463, 467 n.3 (4th Cir. 2015) (same); Luke v. Family Care & Urgent Med. Clinics, 323 F. App'x 496, 500 (9th Cir. 2009) (same).

Here, Defendant asserts Mr. Campbell's supplemental report is untimely because it is not a true "supplement" within the meaning of Rule 26(e). See Doc. No. 71 at 2.[1] Rather, the purported supplement is actually an attempt to "bolster his original opinions" with "new factual and analytical bases for [his] opinions under the guise of corrections or rebuttal to the opinions of Louis Hackney." Id. at 2–3, 5. Defendant chiefly points to three aspects of the supplement to make its case. First, it complains Mr. Campbell should not be permitted to "correct" his "error" on the bar joist. Id. at 4. Second, it asserts Mr. Campbell should not be able to use new charts to further clarify his original opinion that depth of water could have been up to 14 inches above the surface of the roof. See id. at 3. Finally, Defendant maintains Mr. Campbell should not be allowed to address Mr. Hackney's opinion regarding "the amount of water that would be necessary to cause the structural steel framing to collapse," as such a discussion was not included in his original report. Id. at 3. As explained below, the Court finds the supplemental report is properly admissible.

---

[1] Defendant concedes Mr. Campbell's report is timely if it is truly a supplement under Rule 26(e). See Doc. No. 71 at 2.

5

To begin, as to the joist, Defendant does not dispute that Mr. Campbell's updated structural calculations were an attempt to "correct" a prior "misidentification" of the joist. Doc. No. 71 at 4. Nor does it dispute that the error renders the original analysis incorrect. See Doc. No. 67-4 at 1. It also does not dispute that the misidentification was unknown until Mr. Hackney discovered the designation tag on the joist. See id. Still, Defendant asserts the Court should not allow Plaintiff to correct this misidentification because the information was "readily available" to Mr. Campbell if he would have conducted a "thorough review of the building in question" like Mr. Hackney. Id.

The plain language of Rule 26(e) rejects Defendant's "readily available" analysis. By its terms, the rule explains that a party "must supplement or correct" a report if it "learns" that a prior disclosure was "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). In choosing this language, the 2007 Advisory Committee made clear that this duty to correct extends to "information that was not originally provided [even if] it was available at the time of the initial disclosure or response." Here, Plaintiff learned that a key factual basis for Mr. Campbell's ultimate opinion—*i.e.,* the load carrying capacity of the bar joist—was incorrect. In such circumstances, Rule 26(e) does not just permit supplementation—it requires it. See, e.g., Robbins & Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 76 (W.D.N.Y. 2011); Wright v. Liberty Mut. Fire Ins. Co., No. 06-CV-351, 2009 WL 3334822, at *1 (D. Colo. Oct. 13, 2009); Cooper v. Memphis Area Med. Ctr. for Women, No. 04-CV-2806, 2005 WL 5985410, at *2 (W.D. Tenn. Oct. 21, 2005).

Next, the Court must decide whether to exclude the remaining aspects of Mr. Campbell's report—including the chart which clarifies possible water depth and the opinion as to how much water would be necessary to cause the structural steel framing to collapse. For these aspects, Plaintiff does not assert its supplemental report was based on learning Mr. Campbell's original report was "incomplete or correct." See Doc. No. 69 at 13. And, in fact, such information was

6

critical to Mr. Campbell's original "ultimate opinion" as to why the roof collapsed, so the information should have been included in the original report. Bresler v. Wilmington Tr. Co., 855 F.3d 178, 193 (4th Cir. 2017). Nevertheless, Plaintiff asserts the supplemental report should not be stricken because the prior nondisclosure "was substantially justified" and "harmless" under Rule 37(c)(1). Doc. No. 69 at 15–16. The Court agrees with Plaintiff.

This Court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless." S. States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596–97 (4th Cir. 2003). The Fourth Circuit identified five non-exhaustive factors to guide this Court's discretion: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." Id. at 597; see Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (noting the Court is "not required to tick through each" factor). The first four factors "relate mainly to the harmlessness exception, while the remaining factor . . . relates primarily to the substantial justification exception." S. States, 318 F.3d at 597.

Reviewing these factors, the Court first finds that Plaintiff's belated supplemental disclosure was harmless. To start, while recognizing belated disclosures are admissible under Rule 37(c)(1) if they are harmless, Defendant entirely fails to identify any harm it suffered through the delay—either through surprise or other prejudice. See generally Doc. No. 67-1, 71. After careful review, the Court is likewise unable to discern any significant surprise or prejudice. Notably, the supplemental report does not go beyond the issues previously identified by Mr. Campbell and Mr. Hackney. Nor does the supplemental report "interject an additional, and considerably complex, legal theory" or factual theory which would "substantially change the character of the case." Hill

7

v. Coggins, 867 F.3d 499, 508 (4th Cir. 2017). Indeed, Defendant itself concedes that Mr. Campbell's supplement did not "substantively change" the ultimate opinion in any respect. Doc. No. 71 at 5. Assuming Defendant did suffer prejudice, it certainly has been cured, as Defendant has had the opportunity to carefully review the supplement and depose Mr. Campbell regarding its shortcomings. See Doc. No. 69-2. The Court also finds that the potential trial is not disrupted, as trial is currently scheduled more than seven months from the date of the supplement. And the additional information is important, as it will help a trier of fact to better understand Mr. Campbell's ultimate conclusion. Based on these factors, the Court finds that the supplemental disclosure is harmless and admissible under Rule 37(c)(1).

Plaintiff also contends it was substantially justified in issuing a belated supplemental disclosure, as the supplemental report was specifically prepared "to address the new findings and opinions provided in the engineering report prepared by Louis Hackney." Doc. No. 69 at 12. It specifically notes that "[a]bsent a stipulation or court order," such reports are usually permitted "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii); see Doc. No. 69 at 13 n. 17. While the Pretrial Order included expert disclosure deadlines, it did not specifically contemplate or prohibit rebuttal experts.[2] The Court finds that this fact, considered alongside the previously discussed factors, renders Plaintiff's delay substantially justified here.

Based on the foregoing, the Court finds that Mr. Campbell's supplemental report is admissible. Defendant's Motion to Exclude is thus denied.

---

[2] Plaintiff's disclosed its supplement on May 5, 2020—less than thirty days after Defendant submitted Mr. Hackney's report, but after the scheduled discovery completion date of April 24, 2020 provided in the Pretrial Order. Doc. No. 52 ¶ I.G. Plaintiff's delay is reasonable, as Defendant received two extensions prior to disclosing its report. See Doc. Nos. 58, 60. Without those extensions, if Plaintiff would have taken the same amount of time to disclose its supplemental report, that supplement would have been submitted before the discovery completion date.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant Sunrise Roofing's Motion to Exclude the Supplemental Opinions of Plaintiff Spencer Spirit Holdings' Expert Witness, Alan Campbell, pursuant to Federal Rules of Civil Procedure 26 and 37, Doc. No. 67, is **DENIED**.

Signed: August 17, 2020

Max O. Cogburn Jr.
United States District Judge